IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Pamela S. King,                                        :
                        Plaintiff                              Civil Action 2:12-cv-165
                                                       :
        v.                                                     Judge Frost
                                                       :
Michael J. Astrue,                                            Magistrate Judge Abel
Commissioner of Social Security,             :
                        Defendant

**REPORT AND RECOMMENDATION**

Plaintiff Pamela S. King brings this action under 42 U.S.C. §§405(g) and 1383(c)(3)

for review of a final decision of the Commissioner of Social Security denying her

applications for Social Security Disability and Supplemental Security Income benefits.

This matter is before the Magistrate Judge for a report and recommendation on the

administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff King maintains that she became disabled, at age 42,

due to bipolar mood disorder, low blood sugar, undiagnosed sleep disorder, difficulty

concentrating and panic attacks. (*PageID* 212.) She was 45 years old at the time of the

administrative hearing. The administrative law judge found that King retains the

mental residual functional capacity for low stress work, which is defined in the instant

case as the ability to perform simple, routine, and repetitive tasks for two hour periods

of time throughout the course of an eight hour work day. Such tasks should not involve

more than occasional superficial contact with others and should not involve high

production quotas and or strict time deadlines. (*PageID* 68.)

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to accord the weight of rebuttable presumption to plaintiff's treating psychiatrists, Drs. Axelson, Bittner and Flanagan;

- The administrative law judge failed to properly evaluate plaintiff's credibility.

**Procedural History.**  Plaintiff King filed her applications for Social Security Disability and Supplemental Security Income benefits on July 9, 2007, alleging that she became disabled on January 2, 2007.  (*PageID* 151-58, 159-62.)  The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On May 4, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 84-92.)  A vocational expert also testified.  (*PageID* 92-97.)  On July 30, 2010, the administrative law judge issued a decision finding that King was not disabled within the meaning of the Act.  (*PageID* 58-69.)  On January 20, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 50-53.)

**Age, Education, and Work Experience.**  King was born December 26, 1964. (*PageID* 151, 185.)  She has completed two years of college and has additional secretarial training.  (*PageID* 219.)  King previously worked as an administrative assistant, computer programmer, office administrator and office clerk.  (*PageID* 188-205, 213.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized King's

hearing testimony as follows:

> At the hearing, the claimant testified that she resides with her son in a two
> story condominium. She completed high school and she also completed
> secretarial vocational training.
>
> The claimant described her daily activities as loading the dishwasher,
> vacuuming, doing laundry, and pulling weeds occasionally. She stated
> that she visits with family and friends, and that she occasionally attends
> church once every couple of months. The claimant testified that she
> typically uses the stairs of her condominium three or four times per day.
>
> The claimant complained of experiencing back pain, which limits her
> ability to sit and walk. She complained of persistent problems with her
> memory and with reading comprehension, which she attributes to
> depression.
>
> The claimant admitted that she quit her most recent job at a temporary
> agency in September 2007 because the job ended, and not because of any
> documented physical or mental impairment.

(*PageID* 58-59.)

**Medical Evidence of Record.**  In addition to mental impairments, the

undersigned recognizes that King alleges disability in part because of her physical

impairments.  Plaintiff's Statement of Errors, however, focuses primarily on plaintiff's

mental impairments and limitations.  Accordingly, the Court will focus its review of the

medical evidence on plaintiff's mental impairments and limitations:

Prior to the date of disability onset date of January 2, 2007[1], the record shows that King was hospitalized and treated for bipolar affective disorder, mixed type with psychotic features dating back to 1990. (*PageID* 269-337.) King was hospitalized from June 24, 2002 to July 1, 2002 after becoming "acutely homicidal towards her husband after a disagreement with him and was threatening to shoot him." The emergency room personnel also questioned whether she was compliant with her medication after she left. Her blood levels on admission indicated she had been at least partially compliant with her Depakote. She was hypomanic in some of her interactions. The main focus seemed to be marital disputes. During her hospitalization, she participated in groups, was active, and slept well. She was continued on her Depakote and Zyprexa and restarted on Seroquel. She was diagnosed with bipolar disorder, mixed type. (*PageID* 269-70, 275-78.)

King was hospitalized again from July 9, 2002 to July 12, 2002 with a chief complaint of "family wants me here." King stopped taking her medication when she found out she was pregnant and a conflict erupted with her mother. The police took King to Net Care, where hypomania was noticed and she was sent for admission. In the protected structured environment of the hospital, King "quickly came back together." She remained very mildly hypomanic, but in touch with reality with no distorted

---

[1]Plaintiff had previously been found disabled by an administrative law judge on November 15, 2006 due to post-partum depression and bipolar affective disorder, for a closed period from March 25, 2003 through May 1, 2004. *See PageID* 101-11. As the record shows, plaintiff returned to work in 2005-06. *See PageID* 173-81.

judgment or behavior observed.  King was discharged on no medications and outpatient follow up was planned.  (*PageID* 272-74.)

King was seen on March 30, 2003, 12 day postpartum due to having a manic episode from her bipolar disease.  (*PageID* 282-83.)  King was again admitted on April 21, 2003 due to post-partum depression.  (*PageID* 280-81.)

North Community Counseling Center.

King has been treated at North Community Counseling Center since 1999. (*PageID* 558.) The record contains mental health treatment records from North Community Counseling Center from January 2006 to September 2010.  (*PageID* 339-58, 386-422, 457-84, 538-79.)  King was primarily seen by case managers and psychiatric nurses. She received medication from psychiatrists.  In May 2009, the nurses notes state that King was cheery. She made good eye contact and was described as stable (*PageID* 484), but later that month she was described as experiencing increased anxiety, agitation, and loneliness. (*PageID* 571.)  In June 2009, nursing notes said King was "optimistic, jovial, [and] chat[ted] easily." (*PageID* 481.) In October 2009, King reported to the nurse practitioner that "I feel so well now," noting she was stable on all her medication. (*PageID* 478.)  She was jovial and laughed easily.  (*Id.*)  Her primary treating psychiatrists include the following:

Charles Flanagan, D.O.

 King reported to Dr. Flanagan in July 2006 that she had lost a job because she could not learn tasks and she had more signs of sleep apnea.  Dr. Flanagan found King's

mood and affect were labile, she experienced decreased focus and memory, and decreased energy when not working. Dr. Flanagan adjusted King's medication. (*PageID* 419-20.) In May 2007, plaintiff was doing well. She was still unpacking from a trip to South Carolina. She was "not looking for work seriously." (*PageID* 345.) In July 2007, Dr. Flanagan's notes say that King lost her job because she "couldn't learn." (*PageID* 343.) She had decreased focus and memory as well as lower energy when not working. *Id.*

Dr. Flanagan completed a questionnaire in February 2008, wherein he reported that King had been diagnosed with bipolar disorder since 1998. (*PageID* 380-82.) Dr. Flanagan noted that King received counseling and medication; she had worked in the past, and could maintain jobs where stress was minimal; she had poor stress tolerance, and needed much rest because of problems sleeping. (*Id.*) Dr. Flanagan also reported that King's cognitive functioning was "within normal limits," and that she was able to remember and follow directions appropriately; able to maintain attention; and sustain concentration and complete tasks. (*PageID* 381.)

<u>David Axelson, M.D.</u>

The record shows that King saw Dr. Axelson for medication management from March though November 2009. (*PageID* 426, 459-62, 465-68, 540-43, 546-49.) During a mental status examination in May 2009, Dr. Axelson reported that King's activity was slowed; her speech was pressured, her mood was depressed, anxious, angry, and irritable; and her memory and attention and concentration were impaired. He also

reported that when King was doing well, her insight and judgment were fair, but when doing poorly with symptoms, her insight was poor. He found that all positive findings were due to her bipolar disorder diagnosis. (*PageID* 426.)

Dr. Axelson completed a mental functional capacity assessment dated May 14, 2009. (*PageID* 424-25.) According to Dr. Axelson, King was markedly impaired in her abilities to remember locations and work like procedures, to understand, remember and carry-out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruption from psychologically based symptoms, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in a work setting. King was found to be moderately limited in her abilities to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and to travel in unfamiliar places or use public transportation. Dr. Axelson concluded that King would be unemployable for 12 or more months. (*Id.*)

In September 2009, King was upset over financial pressures in which she can't afford things that she thinks she should have; noting that her family helped her financially. (*PageID* 467-69.) In November 2009, Dr. Axelson noted that King had not done well with an attempt to decrease her medication, but when returned to the higher dose, she was more stable. (*PageID* 459-60.) In December 2009, King complained of

fatigue and sleepiness from disruptive sleep.  Dr. Axelson noted she drank at least a 12 pack of diet coke a day as well as coffee in the morning and evening. (*PageID* 465-66.) King was instructed to decrease her caffeine intake, increase her activity level and avoid daytime naps.  (*Id.*)

Stephen Bittner, M.D.

King saw Dr. Bittner, another psychiatrist at North Community Counseling Center from February to September 2010.  (*PageID* 463-64, 568-69.)

In February 2010, King complained to Dr. Bittner of depression, she felt she inadequately disciplined her 7 year old son, had trouble with reading comprehension, and experienced nightly nightmares.  Dr. Bittner found she was neat, pleasant, forthright and verbal, her mood and affect were even, with decreased range, but expressive.  Her behavior, cognition and insight/judgment were noted to be "OK." (*PageID* 463-64.)

On April 29, 2010, Dr. Bittner completed a Mental Residual Functional Capacity. (*PageID* 529-33.)  Dr. Bittner found that King was markedly limited in 19 of 20 areas rated; she was moderately limited in her ability to interact appropriately with the general public.  (*PageID* 529, 531.)  Dr. Bittner reported that King received monthly injections for stability, was hospitalized in 2009 for a manic episode that involved a police escort due to poor choices with risk taking behavior; she was compliant with doctor and nurses visits, but was not stable to work at that time.  (*PageID* 530.)  Dr. Bittner also reported that King had supportive parents who help her maintain care of

her 7 year old son; she occasionally made poor choices that put her at risk for life safety. (*PageID* 532.)  Dr. Bittner opined that King was unable to tolerate work pressure and changes in the workplace and that her memory impairment causes forgetfulness. (*PageID* 533.)

On June 24, 2010, King reported to Dr. Bittner of an incident the weekend prior when she picked up her son, who had stayed with her parents for a week; he didn't want to go with her, and her parents tried to keep him; she called the police; her parents threatened to obtain custody of her son as they paid for everything.  King also reported that she was planning on camping with parents and son that weekend.  Dr. Bittner found King was tearful, sad, and anxious; and her mood and affect were distraught. Her behavior, cognition and insight/judgment were noted to be "OK."  Dr. Bittner continued her medication.  (*PageID* 568-69.)

On September 1, 2010, Dr. Bittner prepared a narrative wherein he reported that King had been treated at North Community Counseling since August 1998.  King has been diagnosed with bipolar disorder, which made it extremely difficult to maintain in employment.  Dr. Bittner opined that based on King's condition, she was unable to work and should be considered disabled.  (*PageID* 558.)

That same day, Dr. Bittner completed a mental residual functional capacity assessment  and questionnaire.  (*PageID* 559-60, 561-63.)  Dr. Bittner found that King's ability to understand, remember and carry out instructions was affected by her diagnosis of bipolar disorder, poor concentration and poor memory.  (*PageID* 559.)

King was also found to be unable to handle any changes or pressure in a work environment due to a bipolar symptoms, which caused her to leave the environment when stressed. (*PageID* 560.) She had mood swings which caused difficulty in social interactions, extreme poor stress tolerance that caused difficulty with routine tasks, and poor motivation as to her medications. (*Id.*)

In completing the mental residual functional capacity assessment, Dr. Bittner found that King would be moderately or markedly limited in all areas of functioning due to a bipolar disorder with intractable depression resulting in poor concentration and memory, mood swings that compromised social interaction, and extremely poor stress tolerance. (*PageID* 561-63.)

<u>James C. Tanley, Ph.D.</u>

Dr. Tanley consultatively examined King on October 15, 2007. (*PageID* 359-61.) King reported that she has bipolar mood disorder, but does not usually have symptoms due to medication. (*PageID* 359.) Her medication regimen consisted of Depakote, Temazepam, and Chantix. She complained of problems with focus and concentration and variation of her mood. She admitted that she smoked two packs of cigarettes per day. King described her daily activities as caring for and playing with her four year old son, doing some household chores, and visiting others. Her appetite varied. She was 5'3" tall and weighed 250 lbs. King also noted that she was able to sleep only a few hours at a time. (*PageID* 360.)

During the mental status examination, Dr. Tanley found that King was cooperative, adequately groomed, and appropriately dressed. She maintained good eye contact and appeared motivated. There were no motor or autonomic manifestations of anxiety. She was alert and fully oriented with a superficially intact recent and remote memory. King was able to remember five digits forward and four digits in reverse; she was able to provide abstract responses to three proverbs; and she was able to perform serial three addition problems. King remembered three out of three objects after a five minute period with interference. Dr. Tanley estimated that King's overall level of intellectual functioning fell within "at least" the average range. Dr. Tanley assessed that King was able to manage her own funds, make her own life decisions, conduct her own living arrangements, and participate in a treatment program. Dr. Tanley diagnosed King with a bipolar disorder, not otherwise specified, in partial remission. He assigned King a Global Assessment of Functioning (GAF) score of 70.

Dr. Tanley opined that King had no impairment of her ability to relate to others; understand and follow simple instructions; and maintain attention for simple repetitive tasks. Dr. Tanley found that King was mildly impaired in her ability to withstand the stress and pressure of daily work. (*PageID* 361.)

**<u>Administrative Law Judge's Findings.</u>** The administrative law judge found that:

1. The claimant met the disability insured status requirements of the Social Security Act on a January 2, 2007, the date she stated she became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since January 2, 2007.

3. The medical evidence establishes that the claimant has "severe" impairments best described as (1) major depression, (2) obesity, (3) degenerative disc disease of the spine, and (4) chronic obstructive pulmonary disease, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony regarding her limitations is credible to the extent that she has severe impairments. However, for the reasons stated in the body of this decision, the claimant's testimony is not credible to show that she is incapable of all work activity at any exertional level.

5. The claimant has the residual functional capacity to lift and carry 25 pounds frequently and 50 pounds occasionally, and sit, stand, and walk (with normal breaks) for six hours each in an eight hour work day. The claimant retains the mental residual functional capacity for low stress work, which is defined in the instant case as the ability to perform simple, routine, and repetitive tasks for two hour periods of time throughout the course of an eight hour work day. Such tasks should not involve more than occasional superficial contact with others and should not involve high production quotas and or strict time deadlines (20 CFR §§404.1545 and 416.945).

6. The claimant's past relevant work as a file clerk did not require the performance of work related activities precluded by the above limitations (20 CFR §§404.1565 and 416.965).

7. The claimant's impairments do not prevent her from performing her past relevant work.

8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§404.1520(f) and 416.920(f)).

(*PageID* 68-69.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla."'  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight."' *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  King argues that the decision of the Commissioner denying benefits should be reversed because:

• The administrative law judge failed to accord the weight of rebuttable presumption to plaintiff's treating psychiatrists, Drs. Axelson, Bittner and Flanagan.  According to plaintiff, the administrative law judge refused to give Dr. Axelson controlling weight, it failed to discuss whether he was entitled to the greatest weight, and totally failed to discuss Dr. Flanagan or Dr. Bittner in terms of controlling weight or greatest weight.  (*See* Doc. No. 10 at *PageID* 591.)

Plaintiff also contends that the non-disability opinion of Dr. Tanley did not rebut

the opinions of the three treating psychiatrists, who saw her over nearly four

years.  (*Id.* at *PageID* 592.)  Plaintiff further argues that the treating psychiatrists

established that King's  inability to tolerate work related stress was the primary

disabling factor.  Although the mental residual functional capacity in the

decision included a limitation to "low stress work," no limitation of "low stress"

or "minimal stress" was included in the hypothetical to the vocational expert.  As

a result, the vocational expert did not consider a stress tolerance issue.  (*Id.* at

*PageID* 593.)

- <u>The administrative law judge failed to use the appropriate legal standards in the</u>
  <u>evaluation of plaintiff's credibility</u>.  Plaintiff argues that her minimal daily
  activities are supported by the treatment record which stated she had difficulty
  maintaining memory/attention/concentration.  Plaintiff further contends that a
  fair reading of her testimony does not support a conclusion she was mentally
  able to function at a level comparable to typical work activities.  Plaintiff also
  argues that the administrative law judge's credibility determination was based
  almost exclusively on her minor inaccuracy in answering the question as to why
  she didn't work after September 2007.

**Analysis**  Treating Physician: Legal Standard.  The treating physician rule, when

applicable, requires the administrative law judge to place controlling weight on a

treating physician's or treating psychologist's opinion rather than favoring the opinion

of a nonexamining medical advisor or a one-time examining physician or psychologist

14

or a medical advisor who testified before the administrative law judge. *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6ᵗʰ Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*)

Furthermore, the Commissioner's regulations provide that he will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. (*Id.*)

There is a rebuttable presumption that a treating physician's opinion is entitled to great deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th

Cir. 2007). However, for the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson*, 378 F.3d at 544 (6th Cir. 2004).

Treating physician: Legal Analysis. Plaintiff contends the she is more psychologically limited than the administrative law judge found. She reasons that the administrative law judge's assessment of her mental work abilities was not supported by the evidence of record. And, according to plaintiff, the administrative law judge failed to evaluate the opinions of treating psychiatrists, Drs. Axelson, Bittner and Flanagan as required by the Regulations.

Plaintiff argues that the administrative law judge failed to explain what weight he was giving to Dr. Flanagan's assessment about plaintiff's limitations on her mental work abilities. It is important to note that, here, the administrative law judge did not entirely disregard the opinions of Dr. Flanagan. (*PageID* 63.) Instead, the administrative law judge's ultimate residual functional capacity assessment was essentially consistent with Dr. Flanagan's opinion regarding plaintiff's ability to function at work.

As noted above, Dr. Flanagan concluded that plaintiff could maintain jobs where stress was minimal; she had poor stress tolerance, and needed much rest because of problems sleeping. (*PageID* 380-82.) Dr. Flanagan also reported that King's cognitive functioning was "within normal limits," and that she was able to remember and follow directions appropriately; able to maintain attention; and sustain concentration and complete tasks. (*Id.*) The administrative law judge found plaintiff had the residual functional capacity to perform simple, routine, and repetitive tasks for two hour periods of time throughout the course of an eight hour work day. Such tasks should not involve more than occasional superficial contact with others and should not involve high production quotas and or strict time deadline. This accounts for Dr. Flanagan's limitations to minimal stress. (*PageID* 63.) In his hypothetical question to the vocational expert, the administrative law judge included that King "retained the ability to understand, remember, and carry out simple tasks in instructions; able to maintain concentration and attention for two hour segments over an eight hour work period; able to respond appropriately to supervisors and coworkers; and able to adapt to simple changes and avoid hazards in a setting without strict production standards." (*See PageID* 93.) For all these reasons, the administrative law judge reasonably considered Dr. Flanagan's opinion and the administrative law judge's residual functional capacity assessment reasonably accommodates the limitations Dr. Flanagan identified.

Turning to Dr. Axelson's assessment, the administrative law judge found,

Similarly, the opinion of Dr. Axelson has not been assigned controlling weight because Dr. Axelson's own assessment fail to substantiate the type of significant clinical abnormalities that one would expect if the claimant's residual functional capacity were in fact so limited, and Dr. Axelson did not specifically address this weakness in his opinion. Furthermore, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(*PageID* 64, citation to record omitted.)

The administrative law judge's explanation of why he declined to fully accept Dr. Axelson's opinions was sufficient to show that he evaluated this physician's opinions under the required regulatory factors of supportability and consistency. *See Id.* Although the administrative law judge's decision did not use these exact terms, the substance of his explanation regarding Dr. Axelson's opinions adequately addresses these factors. *See Id.*

Dr. Axelson had saw King twice at the time he offered his opinion in May 2009, once in March 2009 and again in May 2009. (*See PageID* 426, 461-62.) In March 2009, Dr. Axelson made essentially no clinical findings beyond noting that plaintiff was doing "OK," and he reduced her medication. (*Id.*)

Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the administrative law judge is not required to

credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine). Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the administrative law judge is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 1527(d)(2).

With respect to Dr. Bittner, the administrative law judge was not required to give Dr. Bittner's April 2010 opinion substantial weight because he could not then be characterized as a "treating physician." Dr. Bittner based his opinion that plaintiff was "unemployable" after seeing her only once. (*See PageID* 463-64.) Thus, Dr. Bittner did not meet the regulatory definition of a treating source. *See* 20 C.F.R. §404.1527(d)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.").However, Dr. Bittner did subsequently see plaintiff at least once more, last seeing her in June 2010. (*PageID* 568-69.) He then executed another residual functional capacity evaluation in

September 2010, again reporting that plaintiff was unemployable.(*PageID* 559-60 and 561-63.)

The Commissioner argues that the administrative law judge's "absence of an explicit treatment" of Dr. Bittner's opinion is harmless error. *See* Doc. No. 11 at *PageID* 602-03. A violation of the rule might be "harmless error" if (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2)--the provision of the procedural safeguard of reasons--even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 550-552 (6th Cir. Ohio 2010)(quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 547). To meet the third exception, "the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an administrative law judge's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006). Thus, if the claimant and reviewing Court can understand the reasons for the weight given a treating physician's opinion by the administrative law judge, strict compliance with the rule may sometimes be excused. (*Id.*)

Dr. Bittner's opinions were inconsistent with the underlying medical evidence and other evidence in the record. After seeing King on one occasion, Dr. Bittner found

that King was markedly limited in 19 of 20 areas rated; she was moderately limited in her ability to interact appropriately with the general public. (*PageID* 529, 531.)  Yet when he treated King he found an essentially normal mental status examination, did not alter plaintiff's medication regimen, and did not indicate the need for her to return for another three months.  King's behavior, cognition and insight/judgment were noted to be "OK." (*PageID* 463-64.)

In addition to not being supported by objective clinical findings, Dr. Bittner's opinions are inconsistent with the other evidence of record.  For example, examining psychologist Dr. Tanley opined that King had no impairment of her ability to relate to others; understand and follow simple instructions; and maintain attention for simple repetitive tasks.  Dr. Tanley found that King was mildly impaired in her ability to withstand the stress and pressure of daily work.  (*PageID* 361.)  Further, Dr. Bittner's opinion is also inconsistent with Dr. Axelson's opinions.  *See PageID* 424-25.

Under these facts, the administrative law judge did not err by rejecting treating psychiatrists' opinions or by finding that plaintiff is not disabled by her alleged mental impairment.

At the end of her argument contending that the administrative law judge failed to give sufficient weight to the treating psychiatrists' opinions that King is disabled, plaintiff argues that those opinions establish that her inability to tolerate work stress is a primary disability factor. Yet, plaintiff argues, although the administrative law judge's

mental residual functional capacity included "low stress work," his hypothetical to the vocational expert contained no limitation to "low stress" or "minimum stress" work.

The administrative law judge told the vocational expert, Dr. Jerry Olshevsky, to assume plaintiff had the ability to perform jobs having simple tasks in a work setting "without production standards." (*PageID* 93.) Dr. Olshevsky responded that with those limitations King could perform her former job as a file clerk. *Id.* The administrative law judge's decision states that plaintiff retains the ability to perform "low stress work" that did "not involve more than occasional superficial contact with others and should not involve high production quotas and or strict time deadlines." (*PageID* 63 and 68.) There is no substantial difference between the hypothetical given the vocational expert and the residual functional capacity finding in the administrative law judge's decision. The administrative law judge did not err in finding that plaintiff retained the ability to perform her former job as a file clerk.

<u>Evaluation of Plaintiff's Credibility.</u>

Plaintiff's second claim of error finds fault with the administrative law judge's conclusion that her testimony was not entirely credible. King claims that the administrative law judge failed to consider all the factors listed in Social Security Ruling 96-7p. Specifically, King argues that the administrative law judge's credibility determination was improperly based primarily on a lack of objective evidence supporting a psychiatric impairment, which is not manifested by objective findings, and

a slightly inaccurate answer regarding why she stopped her last job.  (Doc. No. 10 at *PageID* 595.)

"The administrative law judge's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 Fed. Appx. 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed.Appx. 988, 995 (6th Cir. 2007) (declining to disturb the administrative law judge's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).

This deference extends to an administrative law judge's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987)).  In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986), the Court of Appeals for the Sixth Circuit established the following test for evaluating complaints of disabling pain.  First, the Court must determine "whether there is objective medical evidence of an underlying medical condition."  If so, the Court must then

> examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853.

Despite this deference, "an administrative law judge's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. The administrative law judge's decision on credibility must be "based on a consideration of the entire record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Discounting credibility to a certain degree is appropriate where an administrative law judge finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. Furthermore, in assessing credibility, the administrative law judge may consider a variety of factors including "the location, duration, frequency, and intensity of the symptoms; . . . [and] the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms . . ." *Rogers*, 486 F.3d at 247.

In the instant case, the administrative law judge assessed King's credibility as to her mental impairments as follows:

> With regard to the claimant's allegations of depression, memory problems, and comprehension problems, the totality of the objective evidence of record documents that on September 5, 2006, the claimant's treating mental health therapist reported that with the claimant's compliance with treatment and medication management of her bipolar disorder, her condition had "remained stable." In this regard, on October 15, 2007, the claimant admitted to Dr. Tanley that her psychological condition was well-controlled with medication management and she denied that she experienced any major persistent psychologically-based symptoms arising from her bipolar disorder. Furthermore, on February 29, 2008, Dr. Flanagan, the claimant's own treating psychiatrist, assessed that despite the claimant's bipolar disorder, the claimant retained the ability to "maintain jobs were stress [was] minimal." In fact, a careful review of the treatment records related to the claimant's psychological condition document that since the claimant's alleged onset of disability of

January 2, 2007, repeated mental status examinations of the claimant have reflected consistently normal findings. On October 15, 2009, the claimant informed her treating mental health therapist that she felt "so well now." The claimant was classified as "stable" on all prescriptions and she was noted to present as "jovial and happy" during the clinical examination.

Finally, as discussed above, the severity of the claimant's mental impairments has been measured by assessing limitations in his activities of daily living; social functioning; concentration, persistence or pace; and any episodes of decompensation of an extended duration (defined as at least two weeks). A careful review of these criteria establishes no disabling deficits of the claimant's mental functioning in any area (see discussion at pages 4 through 6, supra). There is no credible evidence of record that establishes that the claimant has not had at all relevant times hereto, the ability to perform the basic mental demands of work, including the ability to understand, remember, and carry out simple instructions; use judgment; respond appropriately to superficial contact with supervisors and coworkers; and deal with changes in a routine work setting (Regulations 20 CFR 404.1521 and 416.921, and Social Security Ruling 85-15).

(*PageID* 65-66, citation to record omitted.) In making this credibility determination, the administrative law judge properly relied on the record evidence, including objective medical findings and plaintiff's own statements about her daily activities. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms) and 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms). The Court concludes that the administrative law judge's credibility determination likewise enjoys substantial support in the record and will not be disturbed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of

Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel
United States Magistrate Judge
